UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY GUADINO, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:25-cv-00717 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF HARTFORD and | : | NOVEMBER 19, 2025 |
| JASON THODY, | : | |
|     Defendants. | : | |

**RULING ON MOTION TO DISMISS (DOC. NO. 17)**

**I.   INTRODUCTION**

The plaintiff, Anthony Guadino ("Mr. Guadino"), brings this suit against the City of Hartford and Hartford Police Department Chief of Police Jason Thody (hereafter, "Hartford," "then-Chief Thody," and collectively, "defendants"), alleging defendants failed to pay Mr. Guadino overtime and other wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 et seq. See Complaint ("Compl.") (Doc. No. 1) at ¶¶ 37-59. Mr. Guadino also alleges defendants retaliated against him in violation of the FLSA. Id. at ¶¶ 60-71. Furthermore, Mr. Guadino alleges defendants subjected him to a hostile work environment, as well as negligent and intentional infliction of emotional distress under Connecticut law. Id. at ¶¶ 72-93.

Before the court is defendants' Motion to Dismiss. See Defendants' Motion to Dismiss ("Motion") (Doc. No. 17). Plaintiff opposes the Motion. See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") (Doc. No. 24). See also Defendants' Reply Brief ("Reply") (Doc. No. 29).

1

For the reasons stated below, the court grants the Motion in part and denies the Motion in part.

## II. BACKGROUND

### A. Plaintiffs' Alleged Facts

Mr. Guadino was a police officer employed by defendant Hartford Police Department ("HPD"). He worked under the supervision of then-Chief of Police, defendant Jason Thody. Compl. at ¶¶ 6, 14. Mr. Guadino and HPD were parties to a Collective Bargaining Agreement ("CBA"). Id. at ¶ 8. Sometime in early 2022, Mr. Guadino attended a Crisis Intervention Training session during which Mr. Guadino observed a presentation on therapy dogs. Id. at ¶ 12. Thereafter, Mr. Guadino proposed a similar wellness and outreach canine program for the Hartford Police Department. Id. Based on his Crisis Intervention Training, Mr. Guadino developed a formal proposal for a wellness and facility canine, which received the encouragement and support of Mr. Guadino's Sergeant and Captain. Id. at ¶ 13. This proposal was then presented to defendant Chief Thody, who ultimately approved the program. Id. at ¶ 14.

On or around August of 2022, following then-Chief Thody's approval, Mr. Guadino completed a two-week training program and returned with a service dog, Kady, who was trained and designated as a "Facility" or "Wellness" Dog. Id. at ¶ 15. Mr. Guadino and Kady participated in community outreach, officer wellness, peer support, and victim services programming. Id. at ¶ 16. Mr. Guadino was responsible for the care and maintenance of Kady, including feeding, grooming, exercising, and training, and routinely spent an estimated 2 hours per day on tasks related to Kady outside of his standard shift. Id. at ¶¶ 29, 30.

Despite this work, Mr. Guadino was not compensated for off-duty canine care and did not receive a take home vehicle, stipends, or overtime for these duties, unlike other HPD canine handlers. Id. at ¶¶ 20, 21. Upon Mr. Guadino's request for compensation and use of a take-home vehicle, then-Chief Thody denied the request, threatened to shut down the canine program, and stated he would take Kady away if any grievances were filed. Id. at ¶ 22. In July 2024, Mr. Guadino was reassigned to patrol duties. Id. at ¶ 26. Mr. Guadino met personally with interim Chief Howell and command staff to raise the issue of compensation and a take-home vehicle but received only verbal assurances with no ultimate resolution. Id. at ¶ 27. In response to the alleged hostile environment created by defendants and defendants' failure to compensate Mr. Guadino for his canine-related work, Mr. Guadino left the department and found work with another municipal police department. Id. at ¶¶ 35, 36.

B. Procedural Background

Mr. Guadino filed his Complaint on May 5, 2025. See, generally, id. Mr. Guadino claims that defendants violated federal and state wage and hour laws in failing to compensate Mr. Guadino for his canine related work and further alleges that defendants created a hostile work environment when Mr. Guadino complained about this lack of compensation. Id.

On July 11, 2025, defendants filed a Motion to Dismiss. See Motion. On August 22, 2025, Mr. Guadino filed his Opposition to the Motion to Dismiss. See Opposition. On September 12, 2025, defendants filed their Reply to the Opposition. See Reply.

### III.     LEGAL STANDARD

####    A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  See Makarova, 201 F.3d at 113.

####    B.  Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare

4

recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**IV.    DISCUSSION**

Defendants challenge Mr. Guadino's claims under both Rules 12(b)(1) and 12(b)(6). Defendants assert that his claims against the defendants for violating the FLSA's overtime and retaliation provisions, as alleged in Counts One and Three of the Complaint, and his claim under the CMWA as alleged in Count Two, must all fail for lack of subject matter jurisdiction: these claims were subject to the CBA's contractual grievance procedures which Mr. Guadino failed to exhaust. Motion at 2. Defendants further argue that Count Two must be dismissed for lack of subject matter jurisdiction for the additional reason that those claims are time barred. Id.

Defendants assert that Mr. Guadino's claims related to a hostile work environment, negligent infliction of emotional distress, and intentional infliction of emotional distress, as alleged in Counts Four, Five, and Six, must fail for failure to state a claim upon which relief must be granted. Id.

The court addresses these arguments in turn, beginning with the issue of subject matter jurisdiction.

    A.    Subject Matter Jurisdiction Under Rule 12(b)(1)

Defendants urge that this court lacks subject matter jurisdiction over both Mr. Guadino's FLSA and CMWA claims because Mr. Guadino failed to exhaust the grievance procedure provided in the CBA. Defendants also argue that this court is

5

without subject matter jurisdiction over Mr. Guadino's CMWA claim because it is time barred under the CMWA's two-year statute of limitations.

Under the doctrine of exhaustion of administrative remedies, "a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum."  Garcia v. City of Hartford, 292 Conn. 334, 339, (2009) (internal quotations omitted).  The exhaustion doctrine applies in instances where an exclusive grievance or arbitration agreement is contained in a collective bargaining agreement.  Id.  However, the exhaustion doctrine is not absolute.  "[E]xhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." United States v. Colvin, 451 F. Supp. 3d 237, 239 (D. Conn. 2020) (quoting Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019)).

Accepting as true all factual allegations in the Complaint and drawing all reasonable inferences in favor of Mr. Guadino, the court finds he has plausibly alleged futility of the grievance procedure.[1]  Mr. Guadino alleges that. when he approached then-Chief Thody regarding his concerns about his compensation, Chief Thody denied the request, threatened to terminate the canine program, and "stated he would take Kady away if a grievance were filed."  Compl. at ¶ 22.  Mr. Guadino pleads that these alleged "threats were made via official City email and are preserved in city records."  Id.

---

[1] The parties also dispute the extent to which the FLSA and the CMWA require exhaustion of the grievance procedure as a condition precedent to judicial relief.  See Motion at 8-12.  Because the court finds Mr. Guadino has plausibly pled futility in invoking the CBA's grievance procedure, the court need not reach the separate question of whether the two statutes require exhaustion.

at ¶ 23. Then-Chief Thody wrote in his October 22, 2023, email to Hartford Police Union President James Rutkauski:

> "[U]pon receipt of this grievance, I will immediately suspend the support dog program. Officer Guadino will no longer be authorized to have a support dog at work and we will reach out to puppies behind bars to see what our next steps will be to return or reassign the support dog."

Ex. 1 to Pl.'s Opp'n to Defs.' Mot. To Dismiss.[2] It is plausible that Officer Thody's statements would have a chilling effect on Mr. Guadino's decision to invoke the grievance procedure. This is especially so considering the nature of the alleged threat: suspending a wellness program Mr. Guadino invested considerable time in building from its inception and removing from his care a dog he spent hours caring for each week could be considered too onerous of a price to pay to proceed with the grievance process. Mr. Guadino's failure to exhaust the grievance process as outlined in the CBA does not, therefore, deprive this court of subject matter jurisdiction over Counts One, Two, and Three.

Defendants challenge Count Two, the CMWA claim, on the separate ground that it is time barred under the statute of limitations. The CMWA provides that

> "No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues, except that this limitation shall be tolled upon the filing with the Labor Commissioner of a complaint of failure to pay wages pursuant to the provisions of chapter 558."

Conn. Gen. Stat. Ann. § 52-596. Mr. Guadino argues that defendants "maintained a continuous and uniform practice of failing to pay wages required under the CMWA."

---

[2] The email is incorporated by reference to the Complaint, and therefore the court considers it when assessing the adequacy of Mr. Guadino's pleadings regarding futility. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).

7

Therefore, "because this unlawful pay practice was ongoing through the filing of the Complaint, the statute of limitations has not run." Opposition at 14. Though the court does not agree with Mr. Guadino that the alleged conduct constitutes a continuous and uniform practice, his CMWA claim is not entirely barred under the statute of limitations.

As an initial matter, Mr. Guadino does not contend he filed a complaint with the state Labor Commissioner. Therefore, the three-year limitation period does not apply.

With respect to Mr. Guadino's argument that the statute of limitations is tolled because of defendants' continuous and uniform practice, Mr. Guadino fails to allege that his unpaid wages were not readily identifiable at the time he was not paid and that these unpaid wages were part of a uniform practice by defendants. Stated differently, tolling is available under the continuing course of conduct doctrine where it "is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable." Slainte Invs. Ltd. P'ship v. Jeffrey, 142 F. Supp. 3d 239, 259 (D. Conn. 2015) (quoting Watts v. Chittenden, 301 Conn. 575, 583–84 (2011)). Here, Mr. Guadino can readily identify each instance where he was due pay for his work with Kady. Indeed, with respect to lost wages, Mr. Guadino's damages are readily calculable and actionable each time compensation was withheld. See id. For that reason, tolling is inapplicable.

In light of the above, Mr. Guadino's CMWA claim is restricted to the two years prior to the date he filed his Complaint, i.e., his claims survive to the extent the conduct alleged occurred after May 5, 2023. From the face of the pleadings, there is some period of time between May 5, 2023, and Mr. Guadino's resignation on October 29, 2024, that could form the basis of a CMWA action. Mr. Guadino does not plead

precisely when Kady was ultimately removed from his care such that he would no longer be entitled to compensation associated with canine care, but such questions turn on issues of discovery and evidence best suited for the summary judgment stage.

For the reasons stated above, Counts One, Two, and Three survive.

B.   Rule 12(b)(6)

Defendants challenge Mr. Guadino's remaining common law claims: Counts Four, Five, and Six, for failure to state a claim upon which relief can be granted. As to Count Four, Mr. Guadino alleges that upon his request for compensation for off-duty work related to Kady, he "was subjected to a pattern of hostility and retaliatory conduct by HPD leadership, including Chief Jason Thody." Compl. at ¶ 73. Mr. Guadino alleges that this hostile conduct included, inter alia, denial of compensation, threats by defendant Thody to suspend the wellness program and remove Kady from Mr. Guadino's care, intimidation designed to suppress Mr. Guadino's complaint, and reassignment from previous duties. Id. at ¶ 74. Defendants challenge this claim on grounds that Connecticut does not recognize a cause of action for a hostile work environment absent allegations of discrimination based on protected status. Motion at 14.

It is not clear to this court that Connecticut law recognizes a hostile work environment claim that is separate from state and federal civil rights statutes that prohibit hostile work environments in connection with protected characteristics. Mr. Guadino cites to Feliciano v. Autozone, Inc., 142 Conn. App. 756, aff'd in part, rev'd in part, 316 Conn. 65 (2015),[3] for the proposition that Connecticut law provides recourse

---

[3] The court notes that Mr. Guadino's citation to Feliciano appears to contain a fabricated quote in its parenthetical. In addition, Feliciano was overturned with respect to the sexual harassment claim

9

when workplace conduct is so abusive as to deny an employee a safe, fair, and non-retaliatory work environment. Opposition at 15. However, Feliciano concerns a plaintiff who alleges national origin discrimination, religious discrimination, sexual harassment, disability discrimination, and race discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"). Feliciano, 142 Conn. App. At 757. The appellate court's discussion of a hostile work environment is specifically within the context of the plaintiff's sex discrimination allegations under the CFEPA. Nothing in that decision disentangles hostile work environment claims from causes of action sounding in protected class discrimination.

Mr. Guadino further argues that failure to recognize a hostile work environment claim independent of protected status discrimination would have the unintended consequence of immunizing abusive employers. Opposition at 16. This argument falls short. The sort of retaliatory and otherwise abusive conduct alleged in the Complaint, in response to protected employment activity, would fall within the ambit of employment-related statutes such as the FLSA and CMWA. Employees are not without recourse when subjected to hostile work environments. However, that is not to say that a hostile work environment is itself a standalone cause of action as Mr. Guadino has sought to plead it. For that reason, Count Four is dismissed.

In Counts Five and Six, Mr. Guadino alleges claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED")

---

(within which the hostile work environment point is addressed) by the Connecticut Supreme Court. See Feliciano v. Autozone, Inc., 316 Conn. 65 (2015).

Counsel is reminded he has a duty of candor to the court under Rule 11 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 11.

respectively. See Compl. at ¶¶ 79-93. In his NIED claim, Mr. Guadino alleges that (i) defendants owed Mr. Guadino a duty to act reasonably in the course of administering his employment, (ii) that defendants knew or should have known that their conduct related to the dissolution of the wellness program and withholding Mr. Guadino's compensation created an unreasonable risk of emotional distress, and (iii) the direct and proximate result of this conduct was Mr. Guadino's severe emotional distress, reputational damage, professional standing, and ultimate forced departure from the Hartford Police Department. Id. at ¶¶ 80-85.

Under Connecticut law, negligent infliction of emotional distress in the employment context exists only if based on unreasonable conduct in the termination process. Parsons v. United Techs. Corp., Sikorsky Aircraft Div., 243 Conn. 66, 88 (1997). Indeed,

> "Connecticut courts have… recognized that because of the inherently competitive and stressful nature of the workplace and the difficulties surrounding roof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims."

Douglas v. Mystic Motor Inn, Inc., No. CV136018304, 2013 WL 7084791, at *5 (Conn. Super. Ct. Dec. 31, 2013) (quoting in part Perodeau v. Hartford, 259 Conn. 729, 758 (2002)). An individual may not be found liable for NIED where the conduct occurred within a continuing employment context. Id. Here, Mr. Guadino alleges that the unreasonable conduct accrued in the course of his employment with defendants. While Mr. Guadino alleges that this conduct prompted his ultimate resignation, the conduct itself was not in the context of a termination (constructive or otherwise). Therefore, this conduct cannot form the basis of an NIED claim in the employment context.

Furthermore, as defendants point out, municipal corporations are immune from liability for negligence in the performance of a governmental function unless otherwise abrogated by statute. Wysocki v. City of Derby, 140 Conn. 173, 175 (1953). Indeed, a plaintiff cannot recover for negligence for performance of discretionary government functions unless provided by statute. Fortune v. City of New London, No. CV97-0082795-S, 1999 WL 33227495, at *4 (Conn. Super. Ct. Dec. 14, 1999). Whether an act complained of is ministerial, that is, it does not require the exercise of discretion in its execution, or discretionary, is a question of law. Redfearn v. Ennis, 28 Conn.App. 398, 401 (1992). Mr. Guadino has not pled, nor could he plead, that management of the canine program, including whether to suspend that program, is ministerial given that HPD was not obligated, statutorily or otherwise, to create the canine program and therefore the program's existence was entirely elective. Because Mr. Guadino fails to bring his negligence action pursuant to statutory abrogation and he has not plead facts that raise the inference that the complained-of conduct is ministerial in nature, Count Four must fail and is therefore dismissed.

Finally, with respect to Mr. Guadino's Count Six, alleging IIED, Mr. Guadino alleges that defendants engaged in "extreme and outrageous conduct intended to cause, or with reckless disregard for the likelihood of causing, [p]laintiff severe emotional distress." Compl. at ¶ 88. Mr. Guadino alleges that defendants' "conduct exceeded all bounds of decency tolerated by a civilized society and was particularly egregious given the power imbalance between [p]laintiff and his superiors." Id. at ¶ 91. As a result of this conduct, Mr. Guadino alleges he "suffered severe emotional distress,

including anxiety, loss of professional reputation, emotional anguish, and mental trauma." Id. at ¶ 92.

To allege IIED, a plaintiff must show:

"(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."

Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000).  Liability for IIED requires conduct that "exceeds all bounds usually tolerated by decent society." Id. The complained of conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.  The bar for what constitutes extreme and outrageous conduct is very high.  Holmes v. Town of E. Lyme, 866 F. Supp. 2d 108, 135 (D. Conn. 2012).

In the employment context, the threshold may be considered even higher. Indeed, individuals in the workplace can reasonably expect some level of emotional distress, perhaps even significant distress, as a result of common work environment functions.  Perodeau, 259 Conn. at 757 (2002).  However, behavior that might otherwise fail to constitute extreme and outrageous conduct may rise to that level and be actionable IIED when it comes from someone in a position of actual or apparent authority.  Sangan v. Yale University, 2006 WL 2682240, *6 (D.Conn. Sept. 15, 2006).

Here, Mr. Guadino has plausibly pled extreme and outrageous conduct with respect to then-Chief Thody's statements to remove Kady from Mr. Guadino's care and return or reassign her to another program.  Indeed, that this statement came from a

person in a position of actual and apparent authority over Mr. Guadino and concerned a subject matter that could be especially sensitive to Mr. Guadino given his unique relationship with the canine (a canine who specifically was trained to provide therapeutic benefit), it is not implausible to think that such a threat, absent sufficient reason, could be considered extreme.  Given the unique bond between people and animals in their care, it is plausible to understand defendants' intentional use of Kady as leverage to dissuade Mr. Guadino's filing of a grievance to be extreme and outrageous, and therefore actionable IIED.  For these reasons, Count Six survives, at least until summary judgment or trial.

## V.     CONCLUSION

For the reasons stated above, the court denies the Motion with respect to Counts One, Two, Three, and Six, and grants the Motion with respect to Counts Four and Five. (Doc. No. 17).

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of November 2025.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge